IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEVIN FELDER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-437-N-BN |
| | § | |
| CITY OF DALLAS, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Kevin Felder, a former member of the Dallas City Council, representing District 7, filed this *pro se* lawsuit against the City of Dallas, its mayor, and members of its city council on February 24, 2023, alleging that the council district map for Dallas's May 6, 2023 election, which drew Mr. Felder out of his old district, violated the Voting Rights Act. *See* Dkt. No. 3.

Chief Judge David C. Godbey has now referred Mr. Felder's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. *See* Dkt. No. 9.

Mr. Felder amended his complaint twice, once as directed by the Court (because the complaint initially filed was deficient), *see* Dkt. Nos. 6, 8, and a second time as a matter of course, *see* Dkt. No. 12. He also paid the statutory filing fee and thereby undertook the responsibility to serve the defendants. *See* Dkt. Nos. 6, 7, 10, 11, 13-15, 19-24, 27. And the Court struck and unfiled his Mr. Felder's attempted third amended complaint. *See* Dkt. Nos. 16, 18.

At the time that he filed this lawsuit, Mr. Felder also filed a motion requesting an "injunction to suspend Dallas City Council races," explaining that he "would like for the Dallas City Council Election to be suspended until [his] complaint has been heard and addressed." Dkt. No. 4.

This motion for an injunction neither expressly seeks a temporary restraining order nor a preliminary injunction under Federal Rule of Civil Procedure 65. Nor does Mr. Felder seem to comply with the requirements of Rule 65. Nevertheless, because Mr. Felder is proceeding *pro se*, the Court liberally construed Dkt. No. 4 as seeking preliminary injunctive relief under Rule 65.

And, to allow Chief Judge Godbey the ability to rule on findings of fact, conclusions of law, and a recommendation prior to the May 6 election, the Court set an expedited briefing schedule on April 13, 2020. *See* Dkt. No. 30. Defendants responded. *See* Dkt. Nos. 32, 33. And Mr. Felder replied. *See* Dkt. No. 34.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny the construed motion for a preliminary injunction.

**Legal Standards**

A preliminary injunction is "an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (internal quotation marks omitted).

"To be entitled to a preliminary injunction, the applicant must show (1) a

substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009) (internal quotation marks omitted); *accord Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) ("The four prerequisites are as follows: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest."); *see generally Univ. of Tex. v. Camenisch*, 451 U.S. 390, 392, 398 (1981) (approving of the district court's and the United States Court of Appeals for the Fifth Circuit's relying on the balance of the four factors enunciated in *Canal Authority*).

## Analysis

Preliminarily, the captions of the first and second amended complaint include multiple plaintiffs in addition to Mr. Felder. *See* Dkt. No. 8 at 1; Dkt. No. 12 at 1. And, in the operative, second amended complaint, Mr. Felder makes several allegations concerning plaintiffs other than him, alleging, for example, that "[t]he plaintiffs are being denied the right to choose a candidate of their choice" and that "the Dallas City Council approved map [ ] disenfranchised me and the other plaintiffs

of their opportunity to have their voice heard before a decision was made in this matter." Dkt. No. 12 at 9, 11.

But Mr. Felder is not a lawyer. And, as "[p]arties may proceed in federal court only *pro se* or through counsel," *Williams v. United States*, 477 F. App'x 9, 11 (3d Cir. Apr. 20, 2012) (per curiam) (citing 28 U.S.C. § 1654), the purported plaintiffs in the caption, none of whom signed the operative complaint, are not parties to this lawsuit. In fact, it would be reversible error to allow a layperson to represent a *pro se* litigant, and any judgment on the merits entered in such a case would be subject to vacatur by the court of appeals. *See id.* ("The District Court also should not have reached the merits of [*pro se*] father's claim in the absence of proper representation." (citations omitted)). So the sole plaintiff here is Mr. Felder.

And, because the balance of the *Canal Authority* factors weighs against granting Mr. Felder's request for a preliminary injunction, the Court should deny the construed motion for a preliminary injunction.

**I.  Mr. Felder has not shown a likelihood of success on the merits of his claims.**

Through the operative complaint, Mr. Felder alleges violations of Section 2 of the Voting Rights Act and the United States Constitution, *see* Dkt. No. 12 at 7, on the basis that he

> was drawn out of Dallas City Council District 7 by Councilman Adam Bazaldua after the Dallas City Council voted to reject recommended map 41b by the Redistricting Commission that they appointed! This act was done simply to protect his council seat, which is a violation of the Dallas City Charter. I have lived in district 7 for over 25 years and was elected to represent district 7 in 2019. District 5 Councilmember Adam Bazaldua drew me out of Dallas City Council District 7 and into Dallas City Council District 2 for no legitimate reason. He split our

> neighborhood, Hillview Terrace and split Precinct 1065 where I am the Precinct chair in half right down John West Road. This was a intentional personal racial attack against me. He was aided and abetted in this effort by Councilmembers Paula Blackmon and Council Member Jesse Moreno. 4200 white voters were added to District 7 to ensure that District 7 Councilman Adam Bazaldua could be re-elected and that I would not be able to run against him to reclaim the District 7 seat that I previously held.

*Id.* at 10.

Mr. Felder first claims that it was unlawful to draw him out of District 7. But he provides no authority for such a claim. And the undersigned agrees with Defendants that there does not appear to be "authority supporting a right to live or vote in a preferred district." Dkt. No. 32 at 5.

His allegations also appear to assert both a gerrymandering and a vote dilution claim. *See also* Dkt. No. 4 (motion for injunction referencing both).

"Section 2 of the Voting Rights Act prohibits any 'voting qualification or prerequisite to voting or standard, practice, or procedure ... which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color,'" and "governs efforts to dilute the vote of racial minorities through redistricting." *Harding v. Cnty. of Dall., Tex.*, 948 F.3d 302, 308 (5th Cir. 2020) (quoting 52 U.S.C. § 10301(a)).

> To establish a § 2 vote dilution claim, a plaintiff must show, "based on the totality of circumstances, ... that the political processes leading to nomination or election" are "not equally open to participation by members of a class of citizens ... in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice."

*Id.* (quoting 52 U.S.C. § 10301(b)).

But Section 2 does not "'establish[ ] a right to have members of a protected

class elected in numbers equal to their proportion in the population.'" *Id.* (quoting 52 U.S.C. § 10301(b)).

There are two steps to establish a Section 2 vote dilution claim:

> At the first step, the plaintiff must satisfy three threshold conditions: A "minority group" must be "sufficiently large and geographically compact to constitute a majority in a single member district"; the minority group must be "politically cohesive"; and the majority group must vote as a bloc such that it can "usually ... defeat the minority's preferred candidate." "Failure to establish any one of these threshold requirements is fatal," thresholds that guide the determination of whether "minority voters possess the potential to elect representatives in the absence of the challenged structure or practice." If minority voters lack this potential, "they cannot claim to have been injured by that structure or practice."

*Id.* (discussing *Thornburg v. Gingles*, 478 U.S. 30, 50-51 & n.17 (1986); footnotes omitted).

"After meeting the three prongs of *Gingles*, a plaintiff must establish that the 'totality of the circumstances' supports a finding of vote dilution," which "entails a functional analysis that is 'peculiarly dependent upon the facts of each case and requires an intensely local appraisal of the design and impact of the contested electoral mechanisms.'" *Id.* at 308-09 (footnotes omitted).

> By contrast, a racial gerrymandering claim establishes that race was improperly used in the drawing of the boundaries of one or more specific electoral districts. In such cases, race must have been the predominant factor motivating the redistricting process and subordinating traditional race-neutral districting principles, including but not limited to compactness, contiguity, and respect for political subdivisions or communities defined by actual shared interests.

*Id.* at 313 (cleaned up).

For present purposes, "[t]o show a likelihood of success" as to each claim, Mr. Felder "must present a prima facie case, but need not prove that he is entitled to

- 6 -

summary judgment" on the claim. *Daniels Health Sci., L.L.C. v. Vascular Health Sci., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013); *see also Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011) ("All courts agree that plaintiff must present a prima facie case but need not show that he is certain to win." (internal quotation marks omitted)).

Comparing Mr. Felder's allegations to the legal standards (all set out above), his allegations lack facts to support the essential elements of a prime facie case of either gerrymandering or vote dilution. So he has not shown a likelihood of success on the merits of his claims, even considering just the sufficiency of his allegations.

### II. Mr. Felder's delay in filing this lawsuit weighs against finding irreparable harm.

A movant "must show that it is likely to suffer irreparable harm, that is, harm for which there is no adequate remedy at law," and "[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Daniels Health*, 710 F.3d at 585 (internal quotation marks omitted). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008).

While Mr. Felder seeks injunctive and monetary relief, it is likely that he will not be able to recover monetary damages against Defendants, as "under Texas law, a suit against a municipality or its agencies arising out of the performance of its governmental duties or to recover for alleged breach of a contract is deemed to be a suit against the State of Texas for purposes of state sovereign immunity unless some

special exception applies." *Webb v. City of Dall., Tex.*, 314 F.3d 787, 792 (5th Cir. 2002) (collecting cases). And, considering that election day is just weeks away, waiting for this case to be decided on it merits (and then maybe on appeal) would not achieve the injunctive relief that Mr. Felder apparently seeks.

So, while "'[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weigh[ ]s heavily against a claim of irreparable harm,' [t]he absence of an available remedy by which the movant can later recover monetary damages … may also be sufficient to show irreparable injury." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472-73 (5th Cir. 1985) (quoting *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975); citations omitted); *see also Teladoc, Inc. v. Tex. Med. Bd.*, 112 F. Supp. 3d 529, 543 (W.D. Tex. 2015) ("The possibility that the TMB will assert immunity from monetary damages as a state agency also weighs in favor of finding Plaintiffs face irreparable harm." (citations omitted)).

But, here, Mr. Felder's delay in filing this lawsuit "militates against the issuance of a … preliminary injunction." *Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, No. 3:16-cv-1651-L, 2016 WL 4944370, at *16 (N.D. Tex. Sept. 16, 2016); *see also Wireless Agents, L.L.C. v. T-Mobile, USA, Inc.*, No. 3:05-cv-94-D, 2006 WL 1540587, at *4 (N.D. Tex. June 6, 2006) ("Delay in seeking a remedy is an important factor bearing on the need for a preliminary injunction. Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive

relief. Evidence of an undue delay in bringing suit may be sufficient to rebut the presumption of irreparable harm." (cleaned up)).

The map that Mr. Felder now challenges was finalized on June 27, 2022, and, as his second amended complaint reflects, Mr. Felder was present for, and spoke at, that meeting. *See* Dkt. No. 12 at 45-47. But he did not file this lawsuit until February 24, 2023, a few days shy of eight months later – and one week after February 17, 2023, the statutory filing deadline for candidates for the May 6 election. *See* TEX. ELEC. CODE § 143.007(c).

### III. The threatened injury to Mr. Felder does not outweigh the threatened harm caused by enjoining the May 6 election. And granting the preliminary injunction would disserve the public interest.

While neither is the case here, even where a federal district court has found violations based on racial gerrymandering or vote dilution or where a litigant has shown a substantial likelihood of success on the merits of such claims, the United States Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Committee v. Democratic Nat'l Committee*, 140 S. Ct. 1205, 1207 (2020) (collecting cases).

Granting the relief that Mr. Felder seeks would, at a minimum, do just that. As set out above, the map was finalized some eight months prior to Mr. Felder's filing this lawsuit. He filed suit one week after the statutory filing deadline for candidates. And overseas and mail-in ballots for the May 6 election were mailed out between March 21 and March 23, 2023. *See* Dkt. No. 33.

And granting the relief he specifies: "to suspend Dallas City Council races" already in progress until this litigation is resolved (or, for all intents and purposes, indefinitely) would go even further – and be even more disruptive.

## Recommendation

The Court should deny Plaintiff Kevin Felder's construed motion for preliminary injunction [Dkt. No. 4].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 20, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE