IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEVIN FELDER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-437-N-BN |
| | § | |
| CITY OF DALLAS, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Kevin Felder, a former member of the Dallas City Council,
representing District 7, filed this *pro se* lawsuit against the City of Dallas, its mayor,
and members of its city council, alleging that, by drawing a council district map for
Dallas's May 6, 2023 election that drew Mr. Felder out of his old district, Defendants
violated the Constitution and the Voting Rights Act (the "VRA").

Mr. Felder's lawsuit has been referred to the undersigned United States
magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing
order of reference from Chief United States District Judge David C. Godbey. *See* Dkt.
No. 9.

Mr. Felder amended his complaint twice, once as directed by the Court
(because the complaint initially filed was deficient), *see* Dkt. Nos. 6 & 8, and a second
time as a matter of course, *see* Dkt. No. 12. And the Court struck and unfiled his
attempted third amended complaint. *See* Dkt. Nos. 16 & 18.

And, after the Court denied Mr. Felder's construed motion for a preliminary

injunction, *see Felder v. City of Dall.*, No. 3:23-cv-437-N-BN, 2023 WL 3689619 (N.D. Tex. Apr. 20, 2023), *rec. accepted*, 2023 WL 3689991 (N.D. Tex. May 26, 2023), Defendants moved to dismiss the operative complaint under Federal Rule of Civil Procedure 12(b)(6), *see* Dkt. Nos. 41-43. Mr. Felder responded. *See* Dkt. No. 48. And Defendants replied. *See* Dkt. No. 49.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion to dismiss and dismiss this lawsuit with prejudice.

## Legal Standards

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)); *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

As these cases reflect, Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*;

*Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

In sum, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*, 920 F.3d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citation omitted)).

"*Pro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)). And "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

"To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff" and would "'transform the district court from its

legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113

F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g., Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

## Analysis

**I.    Mr. Felder is the only plaintiff in this lawsuit because, as a non-lawyer, he has no standing to prosecute the claims of others.**

Preliminarily, the captions of the first and second amended complaint include multiple plaintiffs in addition to Mr. Felder. *See* Dkt. No. 8 at 1; Dkt. No. 12 at 1. And, in the operative, second amended complaint, Mr. Felder makes several allegations concerning plaintiffs other than him, alleging, for example, that "[t]he plaintiffs are being denied the right to choose a candidate of their choice" and that "the Dallas City Council approved map [ ] disenfranchised me and the other plaintiffs of their opportunity to have their voice heard before a decision was made in this matter." Dkt. No. 12 at 9 & 11.

Assuming they have standing to sue, plaintiffs in federal court may proceed in one of two ways: they "may plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654; *see also Raskin ex rel. J.D. v. Dall. Indep. Sch. Dist.*, 69 F.4th 280, 283 (5th Cir. 2023) ("'[A] party can represent himself or be represented by an attorney,' because § 1654 says he can. On the other hand, he 'cannot be represented by a nonlawyer,' because the statute does not include the phrase, 'or by a nonlawyer.'" (quoting *Gonzalez v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998))); *McPhail v. United States*, No. 5:22-cv-253-H-BQ, 2022 WL 20510185, at *4 (N.D. Tex. Dec. 29, 2022) ("[T]o proceed '*pro se* means to appear for one's self,' and therefore 'a person may not appear on another person's behalf in the other's cause.'" (quoting *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998))), *rec. accepted*, 2023 WL 5216501 (N.D. Tex. Aug. 14, 2023).

So, because Mr. Felder is not a lawyer, while he may prosecute his own claims *pro se*, he may not prosecute the claims of others. *See Raskin*, 69 F.4th at 283 ("[F]or a person to invoke § 1654, the only requirement is that the case he seeks to prosecute must belong to him." (footnote omitted)); *accord Iannaccone*, 142 F.3d at 558.

Accordingly, the sole plaintiff here is Mr. Felder. *Cf. McPhail*, 2022 WL 20510185, at *4 ("[E]ven if a layperson who initiated suit on behalf of another could show that he or she has a 'personal stake' in the litigation to satisfy constitutional standing, the complaint would nevertheless suffer from a defect under § 1654 as to any claim asserted on behalf of the other.").

## II.    Mr. Felder fails to allege a claim on which relief may be granted.

Liberally construed, Mr. Felder asserts that the defendants have violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the VRA.

But Mr. Felder's predominate assertion is that the defendants intentionally drew him out of District 7 to protect the incumbent: "This was [an] intentional personal racial attack against me. [The incumbent] was aided and abetted in this effort by" two Council colleagues. Dkt. No. 12 at 10.

As to this assertion at this stage, the Court must accept it as true. But, even doing so, "claims of excessive partisanship in districting are not justiciable." *Mia Familia Vota v. Abbott*, 977 F.3d 461, 466 (5th Cir. 2020) (citing *Rucho v. Common Cause*, 588 U.S. ____, 139 S. Ct. 2484, 2481 (2019)); *see also Rucho*, 138 S. Ct. at 2506-07 (observing that "[e]xcessive partisanship in districting leads to results that reasonably seem unjust" but that "the fact that such gerrymandering is 'incompatible

with democratic principles,' does not mean that the solution lies with the federal judiciary" and "conclud[ing] that partisan gerrymandering claims present political questions beyond the reach of the federal courts" (citation omitted)).

Turning to due process, the Due Process Clause of the Fourteenth Amendment provides that no "State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

This clause provides both procedural and substantive protections. *See, e.g.*, *DM Arbor Court, Ltd. v. City of Hous.*, Civ. A. H-18-1884, 2021 WL 4926015, at *27 (S.D. Tex. Oct. 21, 2021) ("[W]hereas substantive due process protects plaintiffs from the arbitrary deprivation of protected interests, procedural due process guarantees 'an opportunity to be heard' before the deprivation." (citations omitted)).

To the extent that Mr. Felder attempts to allege a substantive violation of this clause, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994). And Mr. Felder does not plausibly allege that this protection applies to the matters alleged in the operative complaint. So he not alleged a viable substantive due process violation.

Mr. Felder also has not alleged a plausible procedural due process claim. "[D]ue process is flexible and calls [only] for such procedural protections as the particular situation demands." *Serrano v. Customs & Border Patrol*, 975 F.3d 488, 496 (5th Cir. 2020) (per curiam) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). And, where the districting efforts by an elected body (the Dallas City Council) apply to the

community at large and are therefore purely legislative, Mr. Felder has not alleged a procedural due process violation as a matter of law.

As Chief Judge Godbey explained the scope of procedural protections for legislative actions,

> "[w]here a rule ... applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption," so legislative bodies may implement general policies without providing notice-and-hearing procedures to all affected parties. *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915). As a result, "it is well established law that once an action is characterized as legislative, procedural due process requirements do not apply." *Jackson Court Condos., Inc. v. City of New Orleans*, 874 F.2d 1070, 1074 (5th Cir. 1989). This is because when a legislative action "affects a general class of persons, those persons have all received procedural due process – the legislative process." *Cnty. Line Joint Venture v. City of Grand Prairie, Tex.*, 839 F.2d 1142, 1144 (5th Cir. 1988).

*Degan v. Bd. of Trs. of Dall. Police & Fire Pension Sys.*, No. 3:17-cv-1596-N, 2018 WL 4026373, at *4 (N.D. Tex. Mar. 14, 2018).

Mr. Felder also fails to allege plausible claims of equal protection, racial gerrymandering, and vote dilution.

"Racial gerrymandering is prohibited by the Equal Protection Clause of the Fourteenth Amendment." *Robinson v. Ardoin*, 37 F.4th 208, 222 (5th Cir. 2022) (citing *Shaw v. Reno*, 509 U.S. 630, 642 (1993)).

Such unconstitutional gerrymandering occurs when citizens are assigned voting "districts based on their race, such that 'one district [contains] individuals who belong to the same race, but who are otherwise widely separated by geographical and political boundaries, and who may have little in common with one another but the color of their skin.'" *Id.* (quoting *Shaw*, 509 U.S. at 647).

And the United States Supreme Court has

> recognized high bars to challenging supposed racial gerrymanders. For
> a legislative map to constitute a racial gerrymander, a challenger must
> show that race was the "predominant factor" in its design, such that "the
> legislature subordinated traditional race-neutral districting principles,
> including but not limited to compactness, contiguity, and respect for
> political subdivisions or communities defined by actual shared interests,
> to racial considerations."

*Id.* (quoting *Miller v. Johnson*, 515 U.S. 900, 916 (1995)).

"Section 2 of the Voting Rights Act prohibits any 'voting qualification or prerequisite to voting or standard, practice, or procedure ... which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color,'" and "governs efforts to dilute the vote of racial minorities through redistricting." *Harding v. Cnty. of Dall., Tex.*, 948 F.3d 302, 308 (5th Cir. 2020) (quoting 52 U.S.C. § 10301(a)).

> To establish a § 2 vote dilution claim, a plaintiff must show, "based on
> the totality of circumstances, ... that the political processes leading to
> nomination or election" are "not equally open to participation by
> members of a class of citizens ... in that its members have less
> opportunity than other members of the electorate to participate in the
> political process and to elect representatives of their choice."

*Id.* (quoting 52 U.S.C. § 10301(b)).

But Section 2 does not "'establish[ ] a right to have members of a protected class elected in numbers equal to their proportion in the population.'" *Id.* (quoting 52 U.S.C. § 10301(b)).

There are two steps to establish a Section 2 vote dilution claim:

> At the first step, the plaintiff must satisfy three threshold conditions: A
> "minority group" must be "sufficiently large and geographically compact
> to constitute a majority in a single member district"; the minority group
> must be "politically cohesive"; and the majority group must vote as a

> bloc such that it can "usually ... defeat the minority's preferred candidate." "Failure to establish any one of these threshold requirements is fatal," thresholds that guide the determination of whether "minority voters possess the potential to elect representatives in the absence of the challenged structure or practice." If minority voters lack this potential, "they cannot claim to have been injured by that structure or practice."

*Id.* (discussing *Thornburg v. Gingles*, 478 U.S. 30, 50-51 & n.17 (1986); footnotes omitted).

"After meeting the three prongs of *Gingles*, a plaintiff must establish that the 'totality of the circumstances' supports a finding of vote dilution," which "entails a functional analysis that is 'peculiarly dependent upon the facts of each case and requires an intensely local appraisal of the design and impact of the contested electoral mechanisms.'" *Id.* at 308-09 (footnotes omitted).

> By contrast, a racial gerrymandering claim establishes that race was improperly used in the drawing of the boundaries of one or more specific electoral districts. In such cases, race must have been the predominant factor motivating the redistricting process and subordinating traditional race-neutral districting principles, including but not limited to compactness, contiguity, and respect for political subdivisions or communities defined by actual shared interests.

*Id.* at 313 (cleaned up).

And, considering these legal standards, Mr. Felder fails to allege facts that could establish claims for either vote dilution under the VRA or racial gerrymandering in violation of the VRA or the Equal Protection Clause.

The Court should therefore dismiss Mr. Felder's claims with prejudice, considering that he has already been allowed an opportunity to amend.

### III.    The individual defendants are also entitled to qualified immunity as to Mr. Felder's alleged violations of the Constitution.

Finally, the undersigned recognizes that, to the extent that Mr. Felder has sued Dallas's mayor and the members of its city council, these individual defendants have raised the defense of qualified immunity as to any claims against them in an individual capacity, as any claims against them in an official capacity are merely claims against the City. *See, e.g., Palo ex rel. Estate of Palo v. Dall. Cnty.*, No. 3:05-cv-0527-D, 2006 WL 3702655, at *1 n.3 (N.D. Tex. Dec. 15, 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

A government official performing a discretionary duty under color of law who is sued for monetary damages in an individual capacity may assert qualified immunity. *Cf.* Dkt. No. 12 at 11 (requesting monetary damages).

Qualified immunity is generally asserted where a plaintiff has sued under 42 U.S.C. § 1983, for a violation of the Constitution or of federal law. *See, e.g., Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019).

And Defendants appear to assume that qualified immunity applies to violations of the VRA, as a federal statute. *See* Dkt. No. 42 at 16-19.

But, as to federal statutory violations in general, the Court's "starting point [should be] a conviction that substantial analysis is necessary before deciding if qualified immunity ever applies to [a particular statute]." *Stramaski v. Lawley*, 44 F.4th 318, 326 (5th Cir. 2022); *see id.* at 327 ("set[ting] out the principles for the availability of qualified immunity under a statute" and explaining that "[i]t is applicable to a congressional enactment when two conditions exist: (1) 'the tradition

of immunity was so firmly rooted in the common law' and (2) is 'supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine'" (quoting *Wyatt v. Cole*, 504 U.S. 158, 163-64 (1992) (holding that qualified immunity applies to Section 1983 claims))); *see also id.* at 329 (Costa, J., concurring) ("[Q]ualified immunity is not some 'brooding omnipresence in the sky' that automatically attaches in any suit." (quoting *S. Pac. Co. v. Jensen*, 244 U.S. 205, 222 (1917) (Holmes, J., dissenting))).

Absent a threshold analysis as to qualified immunity's applicability to claims under the VRA, the undersigned will just consider the assertions of qualified immunity to apply to Mr. Felder's alleged violations of the Constitution (the Section 1983 claims).

And, where the defense applies and is raised in good faith, "the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity." *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019).

Consequently, "[a] plaintiff attempting to overcome qualified immunity at the Rule 12(b)(6) stage must plead facts that allow this court to reasonably infer that the defendant is liable for the harm alleged." *Babinski v. Sosnowsky*, 79 F.4th 515, 519-20 (5th Cir. 2023) (citing *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020)).

For the reasons set out above, Mr. Felder has not pled such facts. So he has not overcome the individual defendants' assertions of qualified immunity, which, as applicable, provides another basis for the dismissal of Mr. Felder's constitutional claims with prejudice.

## Recommendation

The Court should grant the motion to dismiss [Dkt. No. 41] and enter judgment dismissing this lawsuit with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 22, 2024

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE